IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

ALEKS LATSABIDZE,

Petitioner,

vs.

JEROME KRAMER, Sheriff, Lincoln County, Nebraska, and Custodian of Petitioner at Lincoln County Detention Center; DAVID EASTERWOOD, Acting Field Office Director of ICE Enforcement and Removal Operations, St. Paul Field Office; DAVID J. VENTURELLA, Senior Official Performing the Duties of the Director U.S. Immigration and Customs Enforcement; and MARKWAYNE MULLIN, Secretary U.S. Department of Homeland Security;

Respondents.

**7:26CV5016**

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Aleks Latsabidze's petition for a writ of habeas corpus. (Filing No. 1). Latsabidze is a native and citizen of Georgia detained by U.S. Immigration and Customs Enforcement (ICE) at the Lincoln County Detention Center in North Platte, Nebraska. (Filing No. 1 at 2). Latsabidze alleges that he was unlawfully detained without a warrant and should be released, or at minimum, he is entitled to a bond hearing. For the reasons set forth below, his petition will be granted in part and denied in part.

Latsabidze lawfully entered the United States in 2018 on a B-2 Visitor visa. (Filing No. 13 at 4). He was authorized to remain not beyond March 8, 2019. He sought asylum in 2019 and pursued employment-based permanent residence seven years later. (Filing No. 1 at 7). Before his detention, Latsabidze worked as a commercial truck driver. (Filing No. 1 at 7).

On August 15, 2026, Latsabidze was involved in a serious tractor-trailer collision on Interstate 80 in North Platte. (Filing No. 1 at 7). The collision resulted in the death of another driver. (Filing No. 1 at 7). Latsabidze cooperated with responding law enforcement officers, and he alleges that after they "review[ed] available camera footage," they told him they did not "intend" to criminally charge him and "initially intended to release him." (Filing No. 1 at 7). After learning that Latsabidze was not a citizen, law enforcement contacted ICE. (Filing No. 1 at 7).

According to the ICE Supervisory Detention and Deportation Officer Damien Jones ("SDDO Jones"), he was advised by Nebraska State Patrol ("NSP") that Latsabidze was being placed out of service for the DOT violation due to lack of English proficiency and that criminal charges of Motor Vehicle Homicide may be forthcoming, dependent on information gleaned from the accident reconstruction. (Filing No. 13 at 4). He also determined that Latsabidze had overstayed his visa and had no applications approved that would allow him to remain in the United States lawfully. (Filing No. 13 at 5). SSDO Jones determined that Latsabidze "was a flight risk and probable cause existed for a warrantless arrest, due to Petitioner being placed out of DOT service; was pending criminal charges for Motor Vehicular Homicide; was unlawfully present after overstaying his visitor Visa and was unlikely to remain at the scene while I pursued an administrative arrest warrant." (Filing No. 13 at 5). SDDO Jones asked an NSP trooper authorized to conduct ICE functions to arrest Latsabidze. (Filing No. 13 at 4-5); See 8 U.S.C. § 1357(g).

Local law enforcement honored that request. Latsabidze was booked into the Lincoln County Detention Center the day after the collision, on August 16. (Filing No. 1 at 8). No immigration warrant was presented before he was detained. (Filing No. 1 at 8, Filing No. 13-3). The next day, on August 17, SSDO Jones served Latsabidze with a Notice to Appear (Form I-862), Notice of Custody Determination (Form I-286), and Warrant for Arrest of Alien (Form I-200). (Exhibit 13). On the Form I-286, there is a box checked indicating "I do request an immigration judge review of this custody determination." (Filing No. 13-2 at 1). The form also states that notice was read to Latsabidze in Georgian and notes that he declined to sign the form. (Filing No. 13-2 at 1). There is no evidence in the record that an immigration bond hearing was held.

Latsabidze now challenges the lawfulness of his warrantless arrest and detention. (Filing No. 1). He seeks immediate release or in the alternative, a bond hearing under 8 U.S.C. § 1226(a). (Filing No. 1 at 21-22).

The Court directed Latsabidze to serve his petition on Respondents (Filing No. 3) and ordered Respondents to file a return on the petition within three business days of service to show cause why the petition should not be granted. The Federal Respondents[1] did so (Filing No. 11) and Latsabidze replied (Filing No. 14). The Court reached out to the parties to determine whether a hearing was necessary. The Respondents did not believe a hearing was needed. The Court did not receive an initial response from Petitioner's counsel, and inquired again, but has not received a reply from Petitioner's counsel. Therefore, the Court considers the matter submitted on the parties' written arguments. *See* 28 U.S.C. § 2243.

## STANDARD OF REVIEW

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2). The Court's jurisdiction to hear habeas challenges extends to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under 28 U.S.C. § 2241, a district court can grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Latsabidze bears the burden to show that he is in custody in violation of the law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## DISCUSSION

### I. Warrantless arrest

Latsabidze's first claim for habeas relief is that his continued detention is unlawful because the present record does not establish a valid pre-arrest warrant and the facts do not support a warrantless-arrest exception. There is no question that the Form I-200 warrant postdated Latsabidze's arrest. For purposes of this motion, the Court assumes that Latsabidze's claim – that he is unlawfully detained following an immigration arrest exceeding statutory authority – is a

[1] The Federal Respondents include all but the Custodian of the Lincoln County Detention Center, Sheriff Jerome Kramer. (Filing No. 11). Kramer filed a separate response taking no position "on the substantive issues raised in the Petition" or whether "Petitioner's writ should or should not be granted." (Filing No. 7 at 1).

proper subject for habeas relief. Compare *Castaneda v. McCook*, No. 4:26CV3170, 2026 WL 1724688 (D. Neb. June 15, 2026) (concerning alleged Fourth Amendment violation during traffic stop). In the absence of a warrant at the time of the arrest, the Federal Respondents seek to justify Latsabidze's arrest under the warrantless arrest provisions of 8 U.S.C. § 1357(a). The Court agrees that the record shows that the arrest was lawful under the circumstances.

Generally, officers making civil immigration arrests must have an administrative warrant. *Arizona v. United States*, 567 U.S. 387, 408 (2012). "If no federal warrant has been issued, those officers have more limited authority." *Id.* However, under the Immigration and Nationality Act ("INA") 8 U.S.C. § 1357(a)(2), an immigration officer is authorized to "arrest any alien in the United States" without a warrant if the officer "has reason to believe" that the person "is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest." § 1357(a)(2). The implementing enforcement regulation similarly provides that a warrant "shall be obtained" except when the designated officer has reason to believe the person is likely to escape before one can be obtained. 8 C.F.R. § 287.8(c)(2)(ii). (Filing No. 14-1 at 9).

The Eighth Circuit has interpreted the term "reason to believe" in § 1357(a)(2) to mean "constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010). The probable-cause standard is "incapable of precise definition or quantification into percentages," but it nonetheless boils down to possessing a "reasonable ground for belief of guilt." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (citation omitted). Probable cause must be "particularized with respect to the person to be searched or seized." *Id.*

Courts have construed the phrase "likely to escape" to mean "likely to evade detention by immigration officers." Whether the noncitizen is likely to escape considers not just whether the noncitizen will be located at the scene of encounter with immigration enforcement, but also whether immigration enforcement would be able to arrest the noncitizen at "another clearly identifiable location." *Walther Ademir A. S. v. Blanche*, No. 26-CV-2804 (LMP/SGE), 2026 WL 1734906, at *3 (D. Minn. June 16, 2026) (collecting cases). The likelihood of escape is lower when the individual has resided in the country for a lengthy period of time and has strong community ties. *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 31 (D.D.C. 2025) (collecting cases).

The question before this court is whether immigration officers had probable cause to believe that Latsabidze was likely to escape before a warrant could be obtained for his arrest. The Federal Respondents argue that SSDO Jones reasonably made the determination that he was. (Filing No. 13 at 5). The record shows that Latsabidze cooperated and was forthcoming with local law enforcement about the collision and his immigration status. (Filing No. 1 at 6-8, Filing No. 13-5 at 2). SSDO Jones determined that Latsabidze was unlawfully present in the United States, but "amenable to removal proceedings." (Filing No. 13 at 5). Despite Latsabidze's cooperation after the fatal collision, the Federal Respondents further note facts that weighed in favor of his being "likely to escape." According to the Nebraska State Patrol report, Latsabidze resided in New York at the time of the collision, and the Freightliner truck he drove was registered in New York. (Filing No. 13-5 at 15). Latsabidze was being placed out of DOT service and could no longer operate his commercial truck. (Filing No. 13 at 5). SSDO Jones stated that he had been advised that criminal charges for Motor Vehicular Homicide were pending investigation, and this is corroborated by the report of the State Patrol stating that "the Lincoln County Attorney was notified, and possible criminal charges involving Latsabidze have been discussed and remain under consideration." (Filing No. 13 at 5, Filing No. 13-5 at 1). When SSDO Jones was able to meet with Latsabidze the next day, he served him the warrant.

Latsabidze compares this case to a recent case in this district involving a warrantless arrest where the record was "devoid of evidence" that the Petitioner was likely to escape. *Espinoza-Avalos v. Blanche*, No. 8:26CV191, 2026 WL 1396593 (D. Neb. May 19, 2026); See also *Lopez-Sanchez v. Blanche*, No. 8:26CV264, 2026 WL 1759557 (D. Neb. June 18, 2026). In contrast to the arrest in *Espinoza-Avalos v. Blanche*, SSDO Jones made a particularized assessment and decided to authorize a warrantless arrest of Latsabidze. The arrest was not based solely on suspected immigration status. Compare *Francisco M. A. v. Blanche*, No. 26-cv-2032 (JRT/EMB), 2026 WL 1229701 (D. Minn. May 5, 2026) (likelihood of escape is not presented merely by a noncitizen being removable). In the aftermath of a fatal collision with the potential to bring serious criminal charges, when Latsabidze's livelihood was in jeopardy from his being placed out of DOT service, and when Latsabidze was far from his New York residence, the evidence suggested that ICE officers might not be able to locate Latsabidze after obtaining a warrant to arrest him. See

*Walther Ademir A. S. v. Blanche*, No. 26-CV-2804 (LMP/SGE), 2026 WL 1734906, at *3 (D. Minn. June 16, 2026) (noting that the "the relevant inquiry is … whether it was likely that ICE officers would be able to locate [the Petitioner] after obtaining a warrant to arrest him").

The Federal Respondents have met their burden to show that SSDO Jones had reason to believe that Latsabidze was likely to escape before a warrant could be obtained, and had probable cause to make a warrantless administrative arrest for deportation proceedings under 8 U.S.C. § 1357(a)(2). Because the arrest was authorized under the circumstances, Latsabidze is not entitled to a writ of habeas corpus based on his arrest.

**II. Bond hearing**

Latsabidze also seeks an immigration custody determination or bond hearing. Noncitizens facing pending removal proceedings for a visa overstay are detained pursuant to 8 U.S.C. § 1226. In this case, the parties agree that Latsabidze is presently detained under the authority of § 1226(a), because he was lawfully admitted to the United States as a B-2 visitor and is charged as a nonimmigrant overstay under INA § 237(a)(1)(B). (Filing No. 11 at 4, Filing No. 14-1 at 1-2). Federal regulations provide § 1226(a) detainees bond hearings at the outset of detention. *Jennings v. Rodriguez*, 583 U.S. 281, 288-89, 306 (2018). Specifically, § 1226(a) provides, in relevant part:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> **(1)** may continue to detain the arrested alien; and
>
> **(2)** may release the alien on--
>
> **(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> **(B)** conditional parole . . .

An application for an initial bond redetermination "may be made orally, in writing, or, at the discretion of the Immigration Judge, by telephone." 8 C.F.R. § 1003.19(b).

The Federal Respondents tacitly acknowledge that Latsabidze has not had a bond hearing, but maintain that Latsabidze has not sought one. (Filing No. 11 at 4). This is refuted by the record.

(Filing No. 13-2). The Federal Respondents submitted Latsabidze's Form I-286 Notice of Custody Determination, containing a checked box indicating "I do request an immigration judge review of this custody determination." (Filing No. 13-2 at 1). The form indicates that notice was read to Latsabidze in Georgian. (Filing No. 13-2 at 1). Although Latsabidze declined to sign the Form I-286, the record reflects a request for an initial bond redetermination.

Latsabidze is entitled to the custody process supplied by § 1226(a) and its regulations, including a bond hearing. With no evidence in the record that an immigration bond hearing was held, his continued detention without one is unlawful. To remedy the unlawful aspect of Latsabidze's detention, the Court will therefore order that the Federal Respondents provide him with a bond hearing pursuant to § 1226(a) and 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1) within three days.

Accordingly,

**IT IS ORDERED:**

1. Petitioner Aleks Latsabidze Petition for a Writ of Habeas Corpus. (Filing No. 1) is granted in part and denied in part, as set forth above.
2. The Federal Respondents shall provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) and the corresponding regulations within seven days of this order.
3. If the Federal Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required by this Order, Petitioner must be immediately released from detention.
4. Within fourteen days of the date of this Order, the parties shall provide the Court with a status update concerning Petitioner's release.
5. A separate judgment will be entered.

Dated this 21st day of September, 2026.

BY THE COURT:

Susan M Bazis

Susan M. Bazis
United States District Judge